UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAWN P.,[1]

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[2]

    Defendant.

No. 17 C 4707

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Dawn P. filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Nancy A. Berryhill has been substituted for her predecessor, Carolyn W. Colvin, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

Plaintiff applied for DIB benefits on May 24, 2011, alleging that she became disabled on July 18, 2002 because of chronic back pain and right leg pain. (R. at 82, 98, 189). Her claim was denied initially on June 22, 2011. (*Id.* at 82, 94–98.) Upon further review, the Social Security Administration ("SSA") determined that Plaintiff had established disability, but only from March 16, 2007 through November 17, 2008. (*Id.* at 100–02). Plaintiff thereafter requested a hearing and, represented by counsel, testified at a hearing before an Administrative Law Judge ("ALJ") on November 19, 2012. (*Id.* at 33–36, 45–70). At this hearing, the ALJ also heard testimony from Jeffery Lucas, a vocational expert ("VE"). (*Id.* at 71–75).

On February 14, 2013, the ALJ issued a partially favorable decision. (R. at 13–28). The ALJ concluded that Plaintiff was disabled from March 17, 2007[3] through November 17, 2008 ("the Closed Period"). (*Id.* at 18). During the Closed Period, the severity of Plaintiff's back impairment and obesity medically equaled Listing 1.04A from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and Plaintiff met the insured status requirements as of the date disability was established. (*Id.* at 18, 21). The ALJ, however, concluded that this disability ended on November 18, 2008. (*Id.* at 18). The ALJ found that on this date, medical improvement occurred related to Plaintiff's ability to do work, and she had been able to perform substantial gainful activity from that date through the date of the ALJ's decision. (*Id.* at 18, 23). The

---

[3] Plaintiff had filed a number of DIB applications prior to her May 2011 DIB application. The ALJ determined that Plaintiff's potential DIB eligibility began the day after her January 2007 DIB application was denied on March 16, 2007. (R. 17–18, 633). Plaintiff's prior DIB applications and the ALJ's determination as to the start of Plaintiff's potential DIB eligibility are not at issue on appeal.

2

Appeals Council denied review on May 30, 2014, which left the ALJ's decision as the final decision of the Commissioner. (*Id.* at 1–5); *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

Seeking review in this Court, Plaintiff contested the unfavorable portion of the ALJ's decision, i.e., the ALJ's finding that Plaintiff was not disabled from November 18, 2008 through the date of the decision. (R. at 623). On July 8, 2016, Magistrate Judge Kim granted Plaintiff's motion for summary judgment and remanded the action for further proceedings. (*Id.* at 632–47). After the Appeals Council affirmed the ALJ's finding of disability for the Closed Period, a second administrative hearing was held on March 1, 2017. (*Id.* at 560–96, 655). Plaintiff, who was represented by counsel, again appeared and testified. (*Id.* at 562, 564–88). The ALJ also heard testimony from VE Jacqueline Bethell. (*Id.* at 588–95).

On March 22, 2017, the ALJ issued an unfavorable decision. (R. at 539–53). Noting that the Appeals Council affirmed her previous finding of disability for the Closed Period, the ALJ then determined that (1) as of November 18, 2008, medical improvement related to Plaintiff's ability to work occurred; and (2) Plaintiff's date last insured ("DLI") was June 30, 2009. (*Id.* at 542, 544–45).

Next, applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity from November 18, 2008 to her DLI, June 30, 2009 (hereinafter, the "Open Period"). (R. at 545). At step two, the ALJ found that Plaintiff suffered from the following severe impairments during the Open Period: lumbar degenerative disc disease, obesity, and bursitis. (*Id.*).

At step three, the ALJ determined that, during the Open Period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.*).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[4] and determined that during the Open Period, Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) involving occasional overhead lifting; occasional operation of foot controls bilaterally; and frequent but not constant balancing, stooping, kneeling, crouching, crawling, and climbing.

(R. at 546). Moving to step four, the ALJ determined that Plaintiff was unable to perform any past relevant work during the Open Period. (*Id.* at 551). At step five, based on Plaintiff's RFC, age, education, work experience, and the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, Appendix 2), the ALJ determined that during the Open Period, jobs existed in significant numbers in the national economy that Plaintiff could have performed, such as compression molding machine operator, cafeteria attendant, and housekeeping cleaner. (*Id.* at 551–52). The ALJ also noted that even if she imposed further limitations—specifically, limiting Plaintiff to sedentary work and a sit/stand option every 30 minutes while keeping the same non-exertional limitations from her RFC—a significant number of other potential jobs still existed, such as call-out operator, circuit board assembler, and cutter and paster. (*Id.* at 552). Accordingly, the ALJ concluded that Plaintiff was not under a disability during the Open Period. (*Id.*).

---

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

4

Because it does not appear that Plaintiff filed exceptions with the Appeals Council, the ALJ's March 22, 2017 decision constitutes the Commissioner's final decision. *See* 20 C.F.R. § 404.984(d). Plaintiff again seeks judicial review in this Court.

## II. STANDARD OF REVIEW

A court reviewing the Commissioner's final decision may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation, quotations, and alternations omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). "[W]here the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff makes a number of arguments challenging the ALJ's determination that she was not disabled during the Open Period. After reviewing the record and the parties' briefs, the Court is persuaded by Plaintiff's argument that the ALJ erred in evaluating her symptom allegations.[5]

A two-step process governs the evaluation of a claimant's description of her pain and symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2016 WL

---

[5] Because the Court remands on this basis, it need not address Plaintiff's other arguments at this time.

6

1119029, at *2 (Mar. 16, 2016).[6] "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, at *7. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562. Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence (medical or lay) that does support a claimant's symptom allegations. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

Although the Court will uphold an ALJ's subjective symptom evaluation if it "is not patently wrong," the ALJ "still must competently explain an adverse-credibility finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (internal quotations omitted). Simply reciting the factors set

---

[6] For all determinations made by the ALJ on or after March 28, 2016, SSR 16-3p supersedes SSR 96-7p and its focus on "credibility" because "subjective symptom evaluation is not an examination of the individual's character." *See* SSR 16-3p, at *1. Because the ALJ issued her opinion on March 22, 2017, (R. at 553), SSR 16-3p applies and will continue to apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017).

7

forth in the regulations is not enough: "[w]ithout an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

Here, the ALJ found that Plaintiff's impairments "could have reasonably been expected to cause the alleged symptoms" (step one), but she concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (step two). (R. at 548). The ALJ offers the following reasons for this assessment: (1) Plaintiff's medications were relatively effective in controlling her symptoms, and the medical records did not document significant complaints of side effects or concerns about her presentation due to medication during the Open Period; (2) Plaintiff's daily activities, although "fairly limited," did not constitute "strong evidence in favor of finding [her] disabled"; and (3) the examination and medical records did not support Plaintiff's allegations. (*Id.* at 547–49).

The Court begins by addressing Plaintiff's arguments about the standard governing the ALJ's subjective symptom evaluation. Plaintiff contends that by finding her symptom statements "not entirely consistent" with the evidence in the record, the ALJ relied on an improper evidentiary standard. Plaintiff further

8

contends that that the SSA's implementation of SSR 16-3p, which eliminates the use of the term "credibility," renders the Seventh Circuit's "patently wrong" standard of review inapplicable. (*See* Pl.'s Mem., Dkt. 16 at 17–19).

The Court disagrees on both counts. First, although the "not entirely consistent" phrase is "meaningless boilerplate" language, its use alone does not warrant reversal because, as noted above, the ALJ proceeded to give reasons explaining her ultimate finding. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) ("The use of boilerplate is innocuous when, as here, the language is followed by an explanation for rejecting the claimant's testimony."); *Boyd v. Berryhill*, No. 17 C 3686, 2018 WL 3303263, at *3 (N.D. Ill. July 5, 2018) (addressing the same "not entirely consistent" finding as here).[7] Second, courts in this district and elsewhere in the Seventh Circuit have continued to apply the "patently wrong" standard of review even after the enactment of SSR 16-3p. *See, e.g.*, *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 790–92 (N.D. Ill. 2017); *Spaulding v. Berryhill*, No. 16-cv-6298, 2017 WL 3922878, at *10 (N.D. Ill. Sept. 7, 2017) (citing cases); *Bellamy v. Berryhill*, No. 2:17-cv-02013, 2018 WL 2077734, at *3 (C.D. Ill. Mar. 8, 2018); *Harrell v. Berryhill*, No. 17-cv-00025-JPG-CJP, 2017 WL 6612062, at *7 (S.D. Ill. Dec. 27, 2017). As Plaintiff herself asserts, SSR 16-3p only clarifies, rather than changes, existing law. (Pl.'s Mem., Dkt. 16 at

---

[7] The Court recognizes that another decision from this district found that the ALJ's use of similar "not entirely consistent" language indicated that the ALJ might be applying the wrong evidentiary standard. *See Minger v. Berryhill*, 307 F. Supp. 3d 865, 871–72 (N.D. Ill. 2018). Nonetheless, the *Minger* court still proceeded to substantively address the ALJ's subjective symptom evaluation, as the Court does here. *See id.* at 872–74.

18); *see Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Thus, the Court finds no basis to deviate from the Seventh Circuit's "patently wrong" standard.

As for the subjective symptom evaluation itself, first, the Court finds that the ALJ failed to adequately and properly account for the medications taken and other treatment sought by Plaintiff. *See* SSR 16-3p, at *7 (identifying "[t]he type, dosage, effectiveness, and side effects of any medication" taken and non-medication treatment as factors relevant to a symptom evaluation). Although the ALJ recognized that Plaintiff was prescribed and took appropriate medications, which weighed in her favor, she did not address the strength of Plaintiff's medications or Plaintiff's other attempts to obtain pain relief. (R. at 549). During the Open Period, Plaintiff took strong pain medications—hydrocodone, Neurontin (gapabentin), amitriptyline, and cyclobenzaprine—and Dr. Gopal further observed that Plaintiff required "narcotic analgesia for chronic pain management." (*Id.* at 388, 399, 548). As it is unlikely Plaintiff took these strong pain medications merely "to strengthen the credibility of her complaints of pain and so increase her chances of obtaining disability benefits," her reliance on them favors crediting her allegations. *See Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). The same goes for Plaintiff's attempts to obtain post-surgery pain relief through various other non-surgical modalities, such as physical therapy, multiple rounds of injections, and use of a TENS unit. (*See, e.g.*, R. at 374, 377, 384, 392, 397, 401); SSR 16-3p, at *8 (explaining that trying a variety of treatments may show that an individual's symptoms are intense and persistent).

In noting that Plaintiff's medical records did not "document significant complaints of side-effects or concerns about her presentation due to medications" despite her use of pain medications, the ALJ also improperly used Plaintiff's failure to complain about side effects from her medication to discount her allegations. (R. at 548). But the lack of side effects from medications does not show that Plaintiff's symptom allegations are without merit. *See Hamilton v. Colvin*, No. 13-4036, 2015 WL 536127, at *12 (N.D. Ill. Feb. 9, 2015) (plaintiff's numerous prescriptions made his symptom allegations more credible, "even assuming no side effects"). Nor does Plaintiff's purported failure to report any side effects: the Seventh Circuit has voiced its skepticism "that a claimant's failure to identify side effects undermines her credibility—after all, not everyone experiences side effects from a given medication, and some patients may not complain because the benefits of a particular drug outweigh its side effects." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). Thus, while a lack of side effects may bear on whether Plaintiff experienced certain side effect-related impairments during the Open Period, it does not provide a legitimate reason to discount Plaintiff's symptom allegations.

Second, the ALJ's analysis of Plaintiff's daily activities was flawed and inadequate. For one thing, discounting Plaintiff's description of her daily activities because of the inability to objectively verify these activities "with any reasonable degree of certainty," as the ALJ did, is erroneous. (R. at 549). Plaintiff's testimony about her daily activities is "naturally subjective, hence the need for the ALJ to make a credibility determination" in the first place. *See Buechele v. Colvin,* No. 11 C 4348,

11

2013 WL 1200611, at *17 (N.D. Ill. Mar. 25, 2013) (addressing the same reasoning from an ALJ). Indeed, "[w]hatever uncertainty may exist around such self-reports [of daily activities] is not by itself reason to discount them[.]" *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). And although the ALJ also asserted that the "medical evidence and other factors" she discussed made it difficult to attribute the degree of limitation in Plaintiff's daily limitations to her medical condition, the ALJ never identified the medical evidence or "other factors" that purportedly showed this difficulty. (R. at 549). The ALJ was required to explain what evidence (or lack of evidence) she believed was inconsistent with Plaintiff's alleged daily activities. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Her failure to do so makes this belief speculative, at best. *See Buechele*, 2013 WL 1200611, at *17.

Third, the ALJ erred when discounting Plaintiff's symptom and pain allegations because they were "not entirely consistent with the medical evidence and other evidence in the record," and because Plaintiff "generally had normal neurological findings." (R. 548–49). As an initial matter, an ALJ may not disregard or discount a claimant's testimony "simply because it is not corroborated by objective medical evidence." *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015); *see also Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014) (explaining that "[b]ecause all of the other reasons given by the ALJ" for her subjective symptom evaluation "were illogical or otherwise flawed," the lack of supporting evidence alone could not support the ALJ's finding that the claimant's symptom allegations were not credible). This is particularly true with allegations of pain, which are at issue here. *See Pierce*, 739

F.3d at 1049–50 ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results.").

Moreover, the ALJ's discussion of the medical records did not properly evaluate the entirety of the relevant evidence and, specifically, evidence that supports Plaintiff's pain allegations. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (the ALJ cannot ignore evidence contrary to her conclusion). On April 21, 2008, Plaintiff underwent a minimally invasive spine fusion and microdiscectomy to address chronic pain in her back and her right leg. (*See* R. at 362 (Apr. 15, 2008 record noting that Plaintiff "had a seven year history of back and radicular right leg pain" and that all "her radicular symptoms are on the right side"), 368). Referring to this surgery, the ALJ found that Plaintiff's assertions were not supported by the medical records because, "contrary to her testimony, she did improve after her surgery." (*Id.* at 548–49; *see also id.* at 547–48 (in reciting the objective record, noting that Plaintiff "improved after her surgery" and that "exams do not support her allegations")).

But merely characterizing Plaintiff as "improving" after her April 2008 surgery does not tell the full story. Six months after surgery, an examination revealed tenderness over the sacroiliac (SI) joint on Plaintiff's right side, which resulted in a "somewhat reduced" range of motion. (R. 386). In February 2009, during the Open Period, Plaintiff reported that she had lower back swelling and worsening pain whenever she did any type of physical activity. (*Id.* at 399). Bharat Gopal, M.D., Plaintiff's primary care physician, noted that this pain and swelling seemed to be

13

chronic. (*Id.* at 399, 550). And a little over a month after the Open Period ended, another examination revealed that Plaintiff's right SI joint was "very exquisitely tender to palpation" and was apparently "the site of most of her pain" in the right hip area. (*Id.* at 401).[8] Yet it does not appear that the ALJ considered any of these exam findings or notations in evaluating Plaintiff's symptom statements. (*See id.* at 547–49).

And even if Plaintiff's back and leg pain on her *right* side generally improved after surgery (at least initially), the medical records show that, during the same time frame, Plaintiff began experiencing significant pain in her *left* lower back, hip, buttocks, and leg. (*See, e.g.*, R. at 371–72, 374, 377, 384, 386, 387, 392–94, 397, 399). As reflected in a July 2008 examination, external rotation and palpation of the greater trochanteric bursa[9] on the left side caused pain. (*Id.* at 371). A month later, Plaintiff was "markedly tender along the left greater trochanteric bursa" and received an injection for the pain. (*Id.* at 374). Although the injection initially helped, Plaintiff was again exhibiting neuropathic pain down her left leg and marked tenderness in her left hip by October 2008, and she received another pain injection. (*Id.* at 377, 384, 386). On November 18, 2008 (the day the Open Period began), Plaintiff was found to

---

[8] Although this record, dated August 5, 2009, postdates the Open Period, it is close enough in time that it may shed light on Plaintiff's impairments during the Open Period, which ended only a little more than a month before. *See Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) (noting "that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period").

[9] The greater trochanteric bursa is found on the outside point of the hip. What is Trochanteric Bursitis?, https://www.webmd.com/pain-management/trochanteric-bursitis#1 (last visited Dec. 23, 2018).

14

be tender in the left buttocks area and had a mildly positive FABER test[10] on her left side when in the supine position, which became worse when the doctor pressed on Plaintiff's lower back. (*Id*. at 387). In December 2008, Plaintiff received another left-side injection, this time in her SI joint; yet Plaintiff still had left buttocks numbness and pain the next month. (*Id.* at 392, 397). Several months later, in August 2009, Plaintiff was still reporting radiculopathic symptoms down her left leg. (*Id.* at 401). And in a November 2009 disability report, Plaintiff reported that she had numbness traveling down her left leg and a shooting pain going down her back and left leg. (*Id.* at 177).

The cause of Plaintiff's left-side pain was diagnosed as greater trochanteric bursitis (R. at 377, 384, 548), and the ALJ determined that Plaintiff's bursitis constituted a severe impairment. (*Id.* at 545). As such, Plaintiff's allegations regarding her left-side pain are particularly relevant to the ALJ's disability finding. *See Moore*, 743 F.3d at 1121 (a severe impairment "significantly limit[s] an individual's ability to perform basic work activities"); *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("[A]n ALJ must consider the combined effects of all of the claimant's impairments[.]"). But, although the ALJ noted Plaintiff's left bursal pain a few times in reciting the objective record (see R. 548), there is no indication that the ALJ analyzed whether Plaintiff's symptom and pain allegations were consistent with the evidence regarding her left-side pain. Comparing Plaintiff's

---

[10] "The FABER test is used to identify the presence of hip pathology by attempting to reproduce pain in the hip, lumbar spine or sacroiliac region." A positive test "reproduces the patient's pain or limits [his or her] range of movement." FABER Test – Physiopedia, https://www.physio-pedia.com/FABER_Test (last visited Dec. 23, 2018).

15

allegations of pain to the evidence regarding both her left- and right-side pain may have changed the ALJ's credibility calculus. As such, the ALJ's analysis, which only analyzed Plaintiff's allegations with respect to the evidence addressing her right-side pain, was inadequate.

The errors set forth above are significant enough that the Court cannot confidently say that the ALJ would have made the same subjective symptom evaluation had she not made these errors. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) ("The administrative law judge based his judgment call on a variety of considerations but three of them were mistaken. Whether he would have made the same determination had he not erred in these respects is speculative."). Errors in a subjective symptom evaluation are not harmless unless a claimant's testimony is incredible on its face or the ALJ indicates that she would have made the same determination even if the questioned circumstances were different and she adequately backs up that position. *See id.* at 821–22; *Pierce*, 739 F.3d at 1051. Here, the ALJ's decision does not indicate that either exception applies. (*See* R. 547–49).

For these reasons, the ALJ failed to "build an accurate and logical bridge" from the evidence to her conclusion. *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotations omitted). And because the ALJ did not support her subjective symptom evaluation with substantial evidence or a legally proper analysis, it "must be considered patently wrong," requiring remand. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016). Although the Court does not hold that the ALJ should have found Plaintiff's subjective allegations fully credible, the foundation underlying

16

her negative assessment was inadequate. Greater elaboration and explanation is necessary to ensure a full and fair review of the evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). On remand, the ALJ shall re-evaluate Plaintiff's subjective symptom and pain allegations pursuant to SSR 16-3p, with due regard to the full range of evidence; sufficiently articulate how she evaluated that evidence; and then explain the logical bridge from the evidence to her conclusions.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [16] is **GRANTED**, and the Commissioner's motion for summary judgment [19] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: January 28, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge